CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KEYANTA LAMONT MOORE,  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>MR. SMITH,  )<br>    Defendant.  ) | Civil Action No. 7:23-cv-00722<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

**MEMORANDUM OPINION**

*Pro se* plaintiff Keyanta Lamont Moore, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983 regarding missing personal property. (Dkt. No. 1.) The lone defendant, Mr. Smith, a property officer at Keen Mountain Correctional Center, moves for summary judgment because Moore did not exhaust his administrative remedies at either Keen Mountain Correctional Center (KMCC) or Red Onion Correctional Center, where Moore was later transferred. (Dkt. Nos. 12, 13.) For the reasons stated below, Smith's motion will be granted.[1]

I. BACKGROUND

**A. Plaintiff's Claims**

In his verified complaint, Moore alleges that, while housed at Keen Mountain Correctional Center,[2] Smith came to his cell door on August 16, 2023, and told him to pack his property because he is "getting transferred today." (Compl., claim 2.) In the process of packing, Smith said "Moore I heard you have been burning em up with paperwork." Moore asked Smith

---

[1] The court issued a *Roseboro* notice on March 18, 2024 (Dkt. No. 15), and Moore has not responded to the summary judgment motion. However, because Moore filed a motion to appoint counsel (Dkt. No. 17), the court will not dismiss this matter for want of prosecution.

[2] Moore was housed a Keen Mountain from March 2, 2018, through August 17, 2023. He was then transferred to Red Onion. (Still Aff. ¶ 4.)

how he knew about this, and Smith said, "you know how the word get around" you should already know what time it is. (*Id.*) When Moore arrived at Red Onion, much of his property was missing. He claims that his property was stolen by Smith "out of retaliation from the pending lawsuit I have against a lot of KMCC staff member[s]." (*Id.*)

Moore also claims that as of September 7, 2023, he had submitted three forms to "view max pro footage." He states that he is trying to follow the grievance process, but the staff is not turning in his form to do so. Also, he claims that the staff at Red Onion, where defendant Smith is not employed, is tampering with his mail. (*Id.*, claim 1.)

## C. Defendant's Motion

Defendant Smith filed a motion for summary judgment, arguing that Moore has failed to exhaust his administrative remedies. In support of his motion, Smith filed affidavits executed by J. Harrison, Operations Manager at Keen Mountain Correctional Center, and T. Still, Grievance Coordinator at Red Onion State Prison. (Ex. 1, 2, Dkt. Nos. 13-1, 13-2.) These affidavits summary the grievance procedure available to Moore and Moore's grievance history.

### 1. Grievance procedure

VDOC Operating Procedure (OP) 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve issues and complaints. (Still Aff. ¶ 5, Encl. A; Harrison Aff. ¶ 5, Encl. A.) VDOC inmates are oriented to the Offender Grievance Procedure when they are initially received into the VDOC and when they are transferred to a different facility. (Still Aff. ¶ 18; Harrison Aff. ¶ 14.)

Regular Grievances generally must be submitted within 30 calendar days from the date of the incident. (Still Aff. ¶ 7; Harrison Aff. ¶ 7.) Before submitting a Regular Grievance, the inmate is required to make a good faith effort to informally resolve his complaint. This can be

done by submitting a Written Complaint form to the grievance department within 15 days of the original incident or discovery of the incident.  If the inmate is not satisfied with the response to the Written Complaint, or if 15 days have passed without staff response to the Written Complaint, the inmate may submit a Regular Grievance on the issue.  If the inmate submits a Regular Grievance, he is required to attach the Written Complaint as supporting documentation.  Even if an inmate has not received a response to a Written Complaint, the inmate must still submit the Regular Grievance within 30 days from the date of the occurrence/incident or discovery of the occurrence/incident.  (Still Aff. ¶ 8; Harrison Aff. ¶ 8.)

Regular Grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within two working days with a note explaining the reason for return.  The inmate can request review of the intake decision by sending the grievance to the Regular Ombudsman.  If the Regular Grievance does not meet the criteria for acceptance, and review by the Regional Ombudsman and does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria in OP 866.1 for acceptance.  There is no further review of the intake decision.  Appealing the intake decision does not satisfy the exhaustion requirement.  (Still Aff. ¶ 10; Harrison Aff. ¶ 10.)

Once a Regular Grievance is accepted during the intake process, there are three levels of review available for Regular Grievances.  (Still Aff. ¶ 11; Harrison Aff. ¶ 11.)  An inmate meets the exhaustion of remedies requirement only when a Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level of appeal without satisfactory resolution of the issue.  Regular Grievances must be accepted for intake and appealed through all available levels of review to satisfy the requirement of exhaustion before filing a lawsuit.  (Still Aff. ¶ 12; Harrison Aff. ¶ 12.)

### 2. Moore's grievance activities at Keen Mountain

On August 30, 2023, Moore filed a Written Complaint (Log No. KMCC-23-INF-01608) with the Keen Mountain grievance department. His complaint stated that Smith threw his property away because Moore was suing another staff member. Also, Moore asserted that certain property items were missing after his transfer to Red Onion. Moore asked, "Where is my other box with all my hygiene, JP6 player, and cloth[e]s[?] Do[es] [Keen Mountain] still have my box? If not, all item[s] need[ ] to be replace[d]." Ms. Viars, the Grievance Coordinator at Keen Mountain, responded to Moore's Written Complaint. Viars advised Moore that she tracked his packages and they were delivered to Red Onion on August 18, 2023, at 3:02 p.m. (Harrison Aff. ¶ 16, Encl. C.) Moore did not file a Regular Grievance on these issues. (Harrison Aff. ¶ 16(a), Encl. C.)

### 3. Moore's grievance activities at Red Onion

At Red Onion, Moore submitted another Written Complaint (ROSP-23-INF- 03835) pertaining to his lost property. In response, Sgt. B. Meade advised Moore that his property was in the warehouse, and once it was processed, Moore's items would be prepared and issued to him. (Still Aff. ¶ 13, Encl. B.) Moore filed a Regular Grievance on these topics that was rejected as a request for services on September 28, 2023. The Institutional Ombudsman, C. Vilbrandt, wrote, "Your property will be brought over from the warehouse after it passes the security/drug dog procedure. Once in property, it will be inventoried and brought to you." The Intake Decision form advised Moore how to appeal, but Moore did not appeal the intake decision. (Still Aff. ¶ 13(a), Encl. C.)

In another Written Complaint filed at Red Onion (ROSP-23-INF- 03889), Moore asserted that that the property officers at Red Onion were refusing to return his personal property box

4

because he is "a black Inmate." Moore claimed that he received his box with his commissary, but he had not received his hygiene, clothes, JPay 6 tablet, and television. In response to the Written Complaint, Moore was told that his property had arrived from the warehouse and he would receive it on package day. (Still Aff. ¶ 14, Encl. D.) Moore submitted a Regular Grievance that was rejected at intake for Moore's failure to provide how he was personally affected. The Institutional Ombudsman C. Vilbrandt wrote, "Your property was received, and you will receive it on the next package day." Moore appealed the intake decision to the Regional Ombudsman where the intake decision was upheld on October 12, 2023. (Still Aff. ¶ 14(a), Encl. E.)

Moore filed an additional Written Complaint (ROSP-23-INF-04080) at Red Onion where he complained that while he received his property on September 29, 2023, he had not been given his JPay 6 tablet. Moore's family had contacted Keen Mountain, and someone there informed Moore's family that it had been sent to Red Onion. Moore was advised by Sgt. Meade that his player was in property, and property was waiting on someone to check the player before issuing it back to him. (Still Aff. ¶ 15, Encl. F.) Moore filed a Regular Grievance on these issues on October 12, 2023, which was rejected on intake as a request for services. The Institutional Ombudsman C. Vilbrandt wrote, "The JP6 players were all confiscated by JPay for assessment such as performance, controls and content. Once the analysis is completed, you will be advised of the outcome." Moore appealed the intake decision to the Regional Ombudsman where the intake decision was upheld on October 25, 2023. (Still Aff. ¶ 15(a), Encl. G.)

Moore also filed a Written Complaint (ROSP-23-INF-04588) complaining that he was charged $29.91 in postage after sending property items that he was not allowed to have to his family. Moore also claimed that his family had not received the items that he sent. Moore

5

requested that Red Onion's Property Department track the box he sent to his family. Moore was told that his property was mailed on October 30, 2023. (Still Aff. ¶ 16, Encl. H.) Moore did not file a Regular Grievance pertaining to these issues. (Still Aff. ¶ 16(a), Encl. H.)

Finally, on November 12, 2023, Moore submitted another Written Complaint (ROSP-23-WRI-00312) complaining about the status of his JPay 6 tablet. Moore voluntarily withdrew this complaint on November 27, 2023. (Still Aff. ¶ 17, Encl. I.)

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show the absence of a material fact dispute, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477

U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**B. Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act (PLRA) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . ."). Consequently, if Moore has not properly presented his claims through an available administrative procedure, the claim must be dismissed pursuant to the PLRA. *Ross v. Blake*, 578 U.S. 632, 639 (2016).

An inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th

7

Cir. 2002)). A court will not dismiss a claim as unexhausted if "a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

As detailed above, Moore filed a complaint at Keen Mountain and then several complaints and grievances at Red Onion upon his transfer related to his personal property items. None of those grievances were properly exhausted because none of them were accepted into the grievance process and appealed through the highest level of appeal set forth in OP 866.1. Thus, Moore did not exhaust the claims in this lawsuit against defendant Smith. For example, on August 30, 2023, Moore submitted a Written Complaint mentioning that Smith threw his personal property away because Moore was suing another staff member. This was filed with the Keen Mountain grievance department after Moore had been transferred to Red Onion. Moore received a response stating that the KMCC property department had tracked the packages and they were delivered to Red Onion on August 18. (Harrison Decl. ¶ 16, Encl. C.) Moore did not follow-up with a Regular Grievance. Specifically, Moore's complaint alleges that his property was missing upon his transfer to Red Onion out of retaliation for a lawsuit he had filed against employees at KMCC. Moore failed to submit any Regular Grievance that was accepted at intake and appealed through the highest eligible level prior to filing this lawsuit.

Moore's complaint states in response to the form's question about grievances that he tried three times and "no response. Staff tampering mail." (Compl. ¶ D.) To the contrary, it appears that the grievance process was readily available to Moore based upon the evidence submitted by defendant that Moore filed several complaints, grievances, and appeals. Under some circumstances, Moore's verified complaint could create an issue of fact to defeat summary judgment, but his allegation is too generic and vague to overcome the specific evidence provided

8

by defendant in his motion. *See VanPelt v. Stanley*, Civil Action No. 7:21cv00139, 2022 WL 520803, at *3 (W.D. Va. Feb. 22, 2022) (explaining that verified complaints by *pro se* prisoners "are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge"). When a *pro se* plaintiff "fails to respond to a defendant's specific evidence contradicting the conclusory allegations of [the plaintiff's] complaint or submissions, . . . that defendant may be entitled to summary judgment." *Allah v. Engelke*, Case No. 7:20-cv-00755, 2023 WL 2188736, at *5 (W.D. Va. Feb. 23, 2023); *see also Montgomery v. Johnson*, No. 7:05CV00131, 2007 WL 1960601, at *1 (W.D. Va. July 5, 2007) (citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)). Moore has not provided any evidence to create an issue of fact in response to the evidence supplied by defendant, who is entitled to summary judgment.

### III. CONCLUSION

The court will grant defendant's motion for summary judgment in an appropriate order.

Entered: March 31, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge